AUSAs: Reyhan Watson; James McMahon

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

24 MJ 869

| UNITED STATES OF AMERICA | **SEALED COMPLAINT** |
| v. | Violation of 18 U.S.C. § 1951 |
| VINCENT CANNADY, | COUNTY OF OFFENSE: |
| Defendant. | WESTCHESTER and NEW YORK |

SOUTHERN DISTRICT OF NEW YORK, ss.:

CARMEN CACIOPPO, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

## COUNT ONE
### (Extortion)

1.    From on or about June 23, 2023 to on or about December 23, 2023, in the Southern District of New York and elsewhere, VINCENT CANNADY, the defendant, willfully and knowingly attempted to commit extortion, as that term is defined in Title 18, United States Code, Section 1951(b)(2), and would and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, CANNADY threatened to publicly disclose confidential and proprietary information belonging to Victim-1, a publicly traded information technology company, unless Victim-1 paid him up to $1.5 million as a purported settlement.

(Title 18, United States Code, Sections 1951 and 2.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

2.    I am a Special Agent with the FBI and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with other law enforcement agents, witnesses, counsel for Victim-1, and others, as well as my examination of documents and reports. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part except where indicated otherwise.

3.    Based on my involvement in this investigation, and set forth in greater detail below, I have learned that VINCENT CANNADY, the defendant, used threats of economic and reputational harm to extort Victim-1. Specifically, after learning that his engagement with Victim-1 had been terminated, CANNADY improperly downloaded confidential and proprietary

information about Victim-1's cybersecurity and information technology architecture ("Victim-1's Information") from Victim-1's database and threatened to publicly disclose it unless Victim-1 paid him up to $1.5 million as a purported settlement of his claim of employment discrimination.

<u>The Defendant Was Terminated by Victim-1 and Then Stole Victim-1's Data</u>

4.     In or around May 2022, VINCENT CANNADY, the defendant, was a contractor at a global information technology contracting and staffing company ("Staffing Company-1"). Staffing Company-1 placed CANNADY on a project for Victim-1, a multinational information technology infrastructure services provider that is based in the Southern District of New York, including in Westchester and Manhattan.

5.     Under his engagement with Victim-1, VINCENT CANNADY, the defendant, among other things, analyzed information technology infrastructure vulnerabilities so that Victim-1 could improve upon the security of its infrastructure services. His responsibilities included assessing and remediating potential vulnerabilities that an unauthorized party could use to steal from Victim-1's information systems. As a result, CANNADY had access to Victim-1's Information.

6.     On or about June 20, 2023, Victim-1 terminated VINCENT CANNADY's, the defendant's, engagement for performance reasons. Staffing Company-1 informed CANNADY that his last working day on assignment with Victim-1 would be June 20, 2023, and that CANNADY would be given two week's pay as severance. CANNADY confirmed that he received notice to return devices Victim-1 had issued to him in connection with his engagement. He sent an email to Victim-1 stating that he would provide a report "[a]s my final act for [Victim-1] . . . later tonight or early tomorrow as a thank you . . . for the severance I will receive." He then sent Victim-1 another email attaching his resume, university transcripts, and a letter of recognition, while expressing his "heartfelt wishes to work at [Victim-1] once more" and noting "I loved my job and the hurtful thing is not being able to do it anymore."

7.     On or about June 23, 2023, VINCENT CANNADY, the defendant, accessed Victim-1's systems from a company-provided laptop, downloaded Victim-1's Information, and then transferred copies of Victim-1's Information to destinations outside of Victim-1's control, including to a private cloud storage account he controlled. The documents and information CANNADY took included architectural maps of Victim-1's servers and other infrastructure, trade secrets, lists and reports of potential vulnerabilities, and details on specific devices in Victim-1's system that are vulnerable to attack by malicious third parties. Some but not all of the vulnerabilities contained in those documents have been remediated.

8.     VINCENT CANNADY's, the defendant's, access, download, and transfer of Victim-1's Information was unauthorized and in breach of Victim-1's policies and procedures, as described in more detail below.  CANNADY had agreed to comply with these policies and procedures as part of the onboarding process for his engagement with Victim-1.

a.     Victim-1's Code of Conduct required CANNADY to return Victim-1's data upon termination:

You must return all [Victim-1] assets, material, property and information you may have upon expiration or termination of your engagement with [Victim-1], including information on personally owned electronic (BYO) devices, and you may not subsequently disclose any [Victim-1] information to any third party. (Code of Conduct § 2.1)

b.     CANNADY was authorized to use Victim-1's data only for purposes of his engagement with Victim-1, and he was not authorized to transfer or otherwise move Victim-1's data without its prior written authorization:

Computer systems provided by [Victim-1] to you for use in your work for [Victim-1] must only be used for conducting [Victim-1's] business or for purposes authorized by [Victim-1] management. All electronic documents created, stored, or communicated using [Victim-1's] computers are the property of, or under the custody of, [Victim-1]. (Security and Use Standards § 2.1)

[Victim-1's] property, assets and information must only be used for [Victim-1] business purposes. This includes, for example, [Victim-1's] network, equipment, facilities, information and communication systems, connections to the Internet and supplies. (Code of Conduct § 2.1)

[Victim-1] equipment/assets remain the property of [Victim-1] and are provided for use only on [Victim-1] premises where I am located and only for the purposes of my assignment at [Victim-1]. Such equipment/assets will not be altered or moved without [Victim-1's] written permission. (Security Guidelines § 2(a))

[CANNADY] will not connect or allow connection to an [Victim-1]-owned computer without prior written approval of [Victim-1], and will only connect with, interact with, inspect and/or use those programs, tools or routines specifically made available by [Victim-1] and which are necessary for me to provide services for my assignment. (Security Guidelines § 3(a))

c.     CANNADY was instructed not to store Victim-1's confidential information on systems not controlled by Victim-1: "Do not store or process [Victim-1] Confidential information on systems that are not controlled by you or [Victim-1]." (Security and Use Standards § 2.3.3).

9.     Based on my conversations with counsel for Victim-1 authorized to speak on Victim-1's behalf and my review of court filings by Victim-1 in federal court litigation involving VINCENT CANNADY, the defendant, Victim-1 never authorized CANNADY to access Victim-

3

1's systems after CANNADY'S engagement was terminated. Nor did Victim-1 authorize CANNADY to transfer its data to outside of Victim-1's control, including to any personal cloud storage accounts or devices owned or controlled by him.

10.    Additionally, based on my conversations with counsel for Victim-1, after VINCENT CANNADY, the defendant, downloaded Victim-1's Information, CANNADY cut off any internet access to the laptop issued to him by, and belonging to, Victim-1, which had the effect of defeating Victim-1's "lock-out" protocols, *i.e.*, Victim-1's ability to protect its data by disabling the laptop remotely.

<u>The Defendant Demanded a "Settlement" when Confronted about the Data He Stole</u>

11.    On or about July 3, 2023, Staffing Company-1 reached out to VINCENT CANNADY, the defendant, at Victim-1's request, to schedule an exit interview:

> [Victim-1's Computer Security Incident Response Team] detected multiple files shared to [CANNADY's] private [cloud storage account] and notified corporate security of the activity. As a result, as part of our normal procedure we would like to understand why this has happened, and we wanted to be sure to protect and delete all [Victim-1] data that was shared. Please let us know when we can discuss this matter to better understand why this occurred and when you can delete all the data and sign an attestation of deletion.

CANNADY responded on or about July 3, 2023, by saying he had received "disparate and discriminatory treatment" and further stated "I cannot talk to you due to my health for at least a month."[1]

10.    On or about July 17, 2023, Staffing Company-1 again reached out to VINCENT CANNADY, the defendant, "due to the sense of urgency;" asked "to get on a meeting with us as soon as possible to delete the files;" and requested a doctor's note supporting CANNADY's alleged inability to speak with Staffing Company-1 for a month "so we have documentation for legal purposes as to the delay in resolving this situation as soon as possible." CANNADY responded, "As [Staffing Company-1] has stated to the [Missouri] Unemployment that I did not perform my duties assigned to me to normal standards those documents will be used in the impending legal actions."

11.    On or about July 20, 2023, the general counsel of Staffing Company-1 reached out to VINCENT CANNADY, the defendant, informing him that he was aware of CANNADY's unauthorized download and transfer of Victim-1's Information, and demanded that CANNADY, by July 24, 2023, contact Staffing Company-1 to coordinate a supervised deletion of the files. The general counsel also noted that he was aware of concerns CANNADY had regarding his assignment with Victim-1, but that CANNADY had not provided any details about those concerns with Staffing Company-1 so that it could investigate those concerns.

---

[1] Direct quotes attributed to VINCENT CANNADY, the defendant, are included in this Complaint as written by him and, therefore, may include typographical or grammatical errors.

12.     That same day, in response to the general counsel of Staffing Company-1's email, VINCENT CANNADY, the defendant, copied two journalists and responded "[Y]our threats of Legal Action is not sufficient to make me delete those files" and "I am allowed to kept these files in my defense or use them to file an affirmative complaint with any Court of Subject Matter Jurisdiction." CANNADY added:

> I will be in touch but will not answer any more emails untill I see a need to. Should [Staffing Company-1] be willing to settle this matter out of Court I am willing to accept 5 years salary otherwise we will let the Courts decide.

CANNADY also included a sentence directed to the journalists he copied to the email: "I have a great business news story for you to share with your Editors."

13.     On or about August 17, 2023, VINCENT CANNADY, the defendant, emailed Victim-1, Staffing Company-1, and several journalists, noting that he did not receive a response from Victim-1 or Staffing Company-1 about his demand for a "settlement," and demanding "5 years salary from [Staffing Company-1] for their discriminatory actions" and "10 years salary from [Victim-1] under intentional infliction of emotional distress law." He also stated, "I will file a Lawsuit in 14 days from this email and recieve and serve summons on [Victim-1] 14 days after that." CANNADY also recommended that his demand be forwarded to Victim-1's legal department, which is based in Westchester, to "have them respond to this email." He added:

> I worked very hard for you and you should have not colluded to fire me after all the hard work I did for [Victim-1] and lying and saying my work was substand is the main reason I am going to sue all of you.

14.     As of on or about August 31, 2023, VINCENT CANNADY, the defendant, had not filed a lawsuit against either Victim-1 or Staffing Company-1. Instead, he sent an email to Victim-1, Staffing Company-1, and several journalists, among others, as of that date threatening the disclosure of Victim-1's Information and again demanding a "settlement":

> As [Staffing Company-1] and [Victim-1] were stating my work was substandard I will be uploading all of the documents in my possession to the Court via Pacer immediately ie once the case is filed and I have electronic access to file documents. As we all know those documents will imperil [Victim-1's] reputation and shake investor confidence, and will include documents being shared with regulatory agencies here and in the EU.
>
> I will not be communicating with [Victim-1] or Staffing [Company-1] anymore unless the communication is initiated by them in order to Settle this issue . . . .

<u>The Defendant Continued His Threats Despite Victim-1's Judicial Intervention</u>

15.    In the summer of 2023, Victim-1 obtained a temporary restraining order from a federal district court that prohibited VINCENT CANNADY, the defendant, from disclosing Victim-1's Information.

16.    On or about September 5, 2023, and following Victim-1's obtaining a temporary restraining order, VINCENT CANNADY, the defendant, sent counsel for Victim-1 an email demanding $1.5 million in exchange for his agreement to destroy and not disclose Victim-1's Information:

> I am writting you today with the hopes that you and [Victim-1] are willing to settle this and any other future litigation either here in America and abroad. As I stated in my Motion that the US District Court TRO in place only is in effect in the USA. Also the TRO does not limit my 1st Amendment Rights only supplying the documents to a pubilically accessible forum.
>
> . . .
>
> I require a 10 year Certificate of Deposit for 1.5 million dollars. That will buy a attestation of all files destroyed by me and a gag order preventing me from ever talking about what I saw or the documents I had in my possession or the documents I had created at [Victim-1] or downloaded . . . .
>
> Finally If you are not willing to settle and I have to get an attorney I will do what ever I can within the boundaries of the TRO! If I get an attorney I will seek 3 times the amount in settlement so I can pay them their 30%. If you refuse [mediation] then I will be forced to seek relief in another Jurisdiction.
>
> You have until the end of the week to either agree to my terms or enter a counter offer after that time I will answer calls from the media and regulatory agencies and begin in earnest seeking representation ( I have only contacted two attornies so far as this case is only 4 days old).

17.    In a second email to counsel for Victim-1 later that same day, VINCENT CANNADY, the defendant, said:

> [Victim-1] sued me to keep md quiet but the TRO only refers to the documents not my first amendment right to FREE SPEECH. I await your counter or no offer by COB FRIDAY then I test international law freedoms of communicating with regulators.

18.     On or about September 14, 2023, VINCENT CANNADY, the defendant, sent an email to Staffing Company-1, offering to not disclose Victim-1's Information and drop his lawsuits against Victim-1 and Staffing Company-1 in exchange for $535,000. CANNADY also noted, "Because I could make 300k or 400k on a book deal or get a job at CNN or ABC News if I published this story I am demanding those amounts wich is including punitive and compensatory damages."

19.     On or about September 18, 2023, VINCENT CANNADY, the defendant, sent an email to Staffing Company-1, "inquiring as to the status of the settlement." An attorney for Victim-1 responded with a request for "assurances that no documents or information has been disseminated or will be in the future." CANNADY responded:

> I am not a fool why would I destroy my only leverage with out a monetary agreement. Until you present me with either yes or no to my settlement requirement (or counter offer) I will not be discussing what I will or can do to assuage [Victim-1] or [Staffing Company-1] fear of damaged reputation as mine is already damaged.
>
> So if you want to continue hard ball go ahead there will be no response from me until a money amount is given.

20.     On or about September 18, 2023, VINCENT CANNADY, the defendant, stated "I would destroy the copies and sign an attestation of destruction pending issuance of the settlement funds," and requested "Payment by Friday ( with destruction of files on Friday pending payment)."

21.     On or about September 20, 2023, VINCENT CANNADY, the defendant, stated "I will not sign [a settlement] for no less than what a book deal would get me . . . I will not provide assertions of destruction for $500, that will cost you $50,000 so the initial payment will be $50,000 not five hundred or we continue litigation."

22.     On or about September 21, 2023, VINCENT CANNADY, the defendant, stated, in response to Victim-1's request that CANNADY provide Victim-1 access to his personal cloud storage server to ensure deletion of Victim-1's information, "What I offer is a zoom meeting where the destruction can be witnesses by who ever, the cd's that guarantee that I do not publish any data that I might have nor go to any regulatory agencies." On that same day, in response to counsel for Victim-1's email advising CANNADY that he would relay CANNADY's settlement position to Victim-1, CANNADY referenced several "articles" that he wanted to write about Victim-1 containing harmful information.

23.     On or about September 25, 2023, VINCENT CANNADY, the defendant, stated "I am willing to sign an attestation of destruction of the flash drives and files on hard drives ( even willing to let you view that by Zoom as well). With the flash drive meeting happening after the remaining 150K Deposited into my account as a settlement."

24.     On or about September 28, 2023, VINCENT CANNADY, the defendant, stated, in response to counsel for Victim-1's request to be given information about how many of

CANNADY's devices contain Victim-1's data: "I simply cannot tell you anything about the files, how many devices, or even where they are without some sort of financial recompense . . . Paym me the initial amount and I will tell you how many devices and send them ones I can to you for you to destroy. . . ."

25.     On or about September 25, 2023, VINCENT CANNADY, the defendant, again sought to leverage the potential harm to Victim-1 from Victim-1's Information to try to induce Victim-1 to agree to a "settlement," stating:

> If this is not acceptible I will cease settlement negotiations,and seek recompense with publication and litigation of my 1st Amendment Right to publish a Cyber Security Policy paper based on the research of the work I performed and my own Professional experience that [Victim-1's] Risk Acceptance Policies puts [Victim-1's] investors at risk of a major data breach.

26.     On or about October 1, 2023, counsel for Victim-1 sent VINCENT CANNADY, the defendant, a draft settlement agreement. CANNADY and Victim-1 engaged in several back-and-forth discussions concerning the terms of settlement.

27.     On or about October 26, 2023, VINCENT CANNADY, the defendant, sent an email to, among other people, Victim-1's counsel in the Southern District of New York and elsewhere, assuring Victim-1 that he had not disclosed any of Victim-1's documents, stating "As I stated in June I shared information with [Newspaper-1], [Newspaper-2], and other Agencies not documents because I wanted negotiating leverage for a settlement."

28.     At several points during his attempt to obtain a "settlement," VINCENT CANNADY, the defendant, sought to protect himself from a criminal prosecution for his actions in connection with the "settlement":

a.     On or about September 24, 2023, CANNADY stated "I want to add that [Victim-1] nor [Staffing Company-1] will ever seek criminal charges against me."

b.     On or about October 4, 2023, after Victim-1 sent CANNADY a draft settlement agreement, CANNADY stated "I had previously asked that [Victim-1] and [Staffing Company-1's] state that they will not seek criminal charges, nor refer the case for criminal review nor report the case to any agency for criminal review after the completion of the agreement. I ask that you place those terms in the agreement."

c.     On or about October 5, 2023, CANNADY sought to add to the draft settlement agreement the term "If [Victim-1] or [Staffing Company-1's] files charges or refers the case for criminal prosecution they forfeit any and all funds given in the settlement agreement."

d.     On or about October 9, 2023, CANNADY stated "I will put together my own little settlement agreement dealing with [Victim-1] or [Staffing Company-1's] waiving their right to pursue Charges and add it into the one you sent me."

e.      On or about October 11, 2023, after allegedly seeking the advice of counsel in connection with the settlement agreement, CANNADY stated "[I]f you will not add the preclusion of Criminal referral then I will add it."

f.      On or about November 13, 2023, CANNADY stated "I am also willing to accept the settlement Agreement with the terms previously provided with an email stating that [Victim-1] will not seek Criminal charges against me in the future after I have given them the files, destroyed the files I have gave etc. . . . ."

29.    On or about December 1, 2023, VINCENT CANNADY, the defendant, through his counsel, sent an email to, among other people, Victim-1's counsel in the Southern District of New York and elsewhere, inquiring "why settlement fell apart."

30.    On or about December 14, 2023, Victim-1, through its counsel, sent an email requesting that VINCENT CANNADY, the defendant, provide (1) "a list of every [Victim-1] file he has" and "5-10 representative files in order to show that he has the files and is able to deliver them in exchange for any payment that's made to him." That same day, CANNADY's counsel stated: "I'm almost certain he will not agree to do so absent a settlement agreement."

31.    On or about December 22, 2023, VINCENT CANNADY, the defendant, through his counsel, sent an email relating to Victim-1's December 14, 2023, request for information about the documents CANNADY had, stating that "if everyone returned to the original settlement agreement then . . . [Victim-1's] fears of not having the information would be alleviated in that the way the settlement is structured is amounts are given at different phases upon verifying that information."

32.    On or about December 23, 2023, VINCENT CANNADY, the defendant, emailed Victim-1's counsel directly, including Victim-1's counsel in the Southern District of New York, stating that Victim-1 already had the information it was seeking and "If you want any information from me that I have already not provided then produce a settlement agreement." CANNADY also said:

> I am a Cyber Security Forensic Expert who has been in IT for over 29 years, if your client had proper off boarding then we would not be talking right now and in fact I moaned at the Management that the off boarding policy was too laxed for proper Cyber Security Standards.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of VINCENT CANNADY, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

Carmen Cacioppo
Special Agent
Federal Bureau of Investigation

Sworn to before me this
28 day of February, 2024

THE HONORABLE VICTORIA REZNIK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

10